# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

TRIDIA CORPORATION,

    Plaintiff,

    v.

PULSE SECURE, LLC, and
HOB, INC.,

    Defendants.

CIVIL ACTION NO.

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Tridia Corporation ("Tridia") files this Complaint for Patent Infringement against Defendants Pulse Secure, LLC ("Pulse") and Hob, Inc. ("Hob") (collectively "Defendants"), and alleges as follows:

### Nature of Action

1.    This is an action for patent infringement under the patent laws of the United States, Title 35, United States Code, seeking monetary damages and other relief against Defendants due to its infringement of Tridia's United States Patent No. RE38,598 ("the '598 Patent").

## The Parties

2.      Tridia is a corporation organized and existing under the laws of the State of Georgia, having a principal place of business at 1355 Terrell Mill Road, Marietta, Georgia.

3.      On information and belief, Defendant Pulse Secure, LLC is a Delaware corporation with its principal place of business at 2700 Zanker Road, Suite 200, San Jose, California.

4.      On information and belief, Defendant Hob, Inc. is a New Jersey corporation with its principal place of business at 245 Saw Mill River Road, Suite 106, Hawthorne, New York.

## Jurisdiction and Venue

5.      This Court has jurisdiction over the subject matter of this action based on 28 U.S.C. §§ 1331 and 1338(a) because this dispute is a civil action for patent infringement arising under the Patent Laws of the United States 35 U.S.C. § 1 *et seq.*

6.      On information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Georgia Long Arm Statute, due at least to each Defendant's substantial business in this forum, including:  (i) at least a portion of the infringement alleged herein; and

(ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals and businesses in Georgia and in this District.

7.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).  Upon information and belief, each Defendant has transacted business in this District, and has committed and/or induced acts of patent infringement in this District.

8.     Joinder of Pulse and Hob in one action is proper pursuant to 35 U.S.C. § 299, because Defendants are jointly liable for acts of infringement arising out of the same accused products and there are questions of fact common to both Defendants.

## Background

9.     Tridia is based in Atlanta, Georgia and has been an innovator in the software business since 1987.  Tridia develops multi-platform connectivity software solutions, which enable companies to remotely access, manage, support and share computer applications in the UNIX/LINUX and Windows® environments.  Some of Tridia's 3,000 enterprise customers include Home Depot, Toshiba Corporation, and L.L. Bean, Inc.

10.     The '598 Patent was reissued from original U.S. Patent No. 5,909,545 (the "'545 Patent").  At the time of filing of the application for the '545 Patent, the Internet was in its infancy.  While the Internet allowed the downloading of software to a computer, the software downloading process was complicated, requiring knowledge about hardware and software features, such that a consumer might not be able to install the software.

11.     Moreover, while remote control programs existed at the time application for the '545 Patent was filed, one of the limitations of such programs was that they required a component of the remote control program to already be installed on both computers prior to any attempt to remotely control one of the computers.

12.     Thus, what was needed was (a) a way to provide on-demand access to another computer without requiring the user to first download and install a software program on the user's system and (b) a remote control program that did not require pre-installation of any components on each computer in order to operate.

13.     The application for the '545 Patent was filed in January 19, 1996. The '545 Patent, entitled "Method and System for On-Demand Downloading of Module to Enable Remote Control of an Application Program over a Network"

4

was duly and legally issued by the United States Patent and Trademark Office on June 1, 1999. A true and correct copy of the '545 Patent is attached as Exhibit A.

14. The '545 Patent underwent a reissue proceeding before the United States Patent and Trademark Office which resulted in the issuance of the '598 Patent on September 21, 2004. A true and correct copy of the '598 Patent is attached as Exhibit B.

15. The '598 Patent was reexamined by the United States Patent and Trademark Office, Reexamination Request No. 90/010,092, and its patentability was reaffirmed on May 18, 2010. A true and correct copy of the Ex Parte Reexamination Certificate is attached as Exhibit C.

16. The inventors of the '598 Patent, Vincent Frese II, W. Brian Blevins, and John P. Jarrett, were employees of Tridia at the time of its filing and remain employees today.

17. Tridia is the owner and assignee of all right, title and interest in and to the '598 Patent and holds the right to sue and recover damages for infringement thereof, including past damages.

18. The '598 Patent is presumed valid.

19.     The '598 Patent claims, *inter alia*, a system, computer storage medium, and method for allowing a first computer to establish on-demand remote control of a second computer.

20.     The technology claimed by the '598 Patent is incorporated into Tridia's iTivity™ product which allows corporate clients on demand remote support of their various computer-based systems and devices.

21.     The claimed on-demand remote control features are often included in remote control software and hardware devices introduced after the date of invention of the '598 Patent. The remote control software and hardware industry has recognized the value of the '598 Patent and multiple companies are licensees of its claimed technology.

22.     In its marketing materials, Hob touts some of the benefits of its "Desktop-on-Demand" service.  For example:

> When someone wants to use HOB Desktop-on-Demand,
> he does not have to install anything on the local PC, nor
> are administrator rights required. This browser-based
> solution is platform independent, i.e., access is available
> from Windows, Linux or Apple MAC machines to
> enterprise-internal PCs.

*     *     *

> With HOB Desktop-on-Demand, an authenticated user can have secure, SSL-encrypted remote access over a standard browser to his or her workplace PC.

*     *     *

> The user remotely accesses, for example, his workplace PC via the integrated Java RDP client HOBLink JWT (Java Windows Terminal), usually over the Internet, from home, a hotel, a business partner's location or from a laptop.

*See* http://www.hobsoft.com/products/connect/JWT_DoD.jsp (accessed April 9. 2015).

23.   In its marketing materials, Pulse touts some of the benefits of its Pulse Connect Secure product:

> Pulse Secure Connect Secure provides secure, authenticated access for remote and mobile users from any web-enabled device to corporate resources—anytime, anywhere.

*     *     *

7

Clientless core Web Access

Secure access to many different types of web-based applications, including many of today's most common Web applications such as Outlook Web Access, SharePoint, and many others.

Remote Desktop Protocol (RDP) access in Pulse Connect Secure can be delivered over HTML5, via third-party RDP, through a WebSockets translator such as Ericom (www.ericom.com).

Provides the most easily accessible form of application and resource access from a variety of end user devices with extremely granular security control options. Completely clientless approach using only a Web.

\*       \*       \*

Premier Java RDP Applet (Optional)

With the Premier Java RDP Applet option, users can remotely access centralized Windows applications independent of the client platform (Mac OS, Linux, Windows, and so on) through Java-based technology. As

a platform independent solution, the Premier Java RDP Applet lets you use the entire range of Windows applications running on the Windows Terminal Server, regardless of how the client computer is equipped. By centrally installing and managing all Windows applications, you can significantly reduce your total cost of ownership.

*See* Pulse Connect Secure Datasheet, Pulse Secure, https://www.pulsesecure.net/download/datasets/1464/PulseSecure_Connect_Secure_121814.pdf (accessed Apr. 10, 2015).

24.     On information and belief, on or about July 22, 2014, Siris Capital acquired the Junos Pulse business from Juniper Networks for $250 million and incorporated the Junos Pulse business under the name Pulse Secure, LLC. As a result of this acquisition, Pulse acquired the employees, customers, and intellectual property associated with the Junos Pulse business.

25.     On information and belief, as a result of this acquisition, the Junos Pulse product line is now owned by Pulse with Pulse and Juniper Networks operating under a Transition Services Agreement (TSA), which is expected to end by July 31, 2015, that allows Juniper Networks to continue to sell Junos Pulse

products owned by Pulse. Pulse and Juniper Networks have stated an intent to enter into a long-term resale framework after the TSA ends that will continue to allow Juniper Networks to sell Junos Pulse products owned by Pulse.

26.     On information and belief, as a result of this acquisition, and these agreements, Pulse is liable for infringing sales of the Junos Pulse products, both before and after the July 22, 2014 acquisition date for the Junos Pulse business.

27.     On information and belief, Pulse manufactures and/or sells a number of products, including the MAG2600, MAG4610, MAG6610, MAG6610 gateways, and services offered under Model Numbers MAG-SM160, MAG-SM360, MAG-CM060, ACCESSX600-ADD-yU, ACCESS-ICE-25PC, MAGX600-ICE, ACCESS-RDP-yU-zYR, ACCESS-PRM-yUzYR, ACCESSX600-ADD-10U, -25U, -50U, -100U, -250U, -500U, -1000U, -2500U, -5000U, -7500U, -10KU, -15KU, -20KU, -25KU, ACCESS-LICENSE-SVR, MAG2600-LICENSE-MBR, MAG4610-LICENSE-MBR, SM160-LICENSE-MBR, SM360-LICENSE-MBR, and MAGX600-IFMAP, ACCESS-EES-xU-zYR, MAGX600-UAC-SRX-25U, -250U, -500U, -5KU, -15KU, MAGX600-OAC-ADD-UAC, PWS-25U-1YR, PWS-100U-1YR, PWS-250U-1YR, PWS-1000U-1YR, PWS-2500U-1YR, PWS-5000U-1YR, PWS-10000U-1YR, PWS-25U-1YR-R, PWS-100U-1YR-R, PWS-250U-1YR-R, PWS-1000U-1YR-R, PWS-2500U-

1YR-R, PWS-5000U-1YR-R, and PWS-10000U-1YR-R, all associated with one or more of the Pulse Connect Secure, Pulse Policy Secure, Pulse Workspace, Pulse Secure Client, Junos Pulse Secure Access Service, Junos Pulse Collaboration, Junos Pulse Mobile Security Suite, and Unified Access Control features (collectively, the "Pulse Accused Instrumentalities").

28.     On information and belief,  HOB manufactures and/or sells a number of products, including HOBLink JWT, HOBLink JWT Enterprise Access, HOB RD VPN, HOB RD VPN blue edition, HOB RD VPN Compact, HOB X11 Gate, HOBLink VPN Anywhere, and HOBLink J-Term (collectively, the "Hob Accused Instrumentalities") that embody and/or practice the technology covered by the '598 Patent.

29.     On information and belief, Pulse includes HOBLink JWT in its Premier Java RDP Applet product in the Pulse Accused Instrumentalities.

As a platform-independent solution, the Pulse Secure Networks® Premier Java RDP Applet lets you use the entire range of Windows applications running on the Windows Terminal Server, regardless of how the client computer is equipped. By centrally installing and managing all the Windows applications, you can

significantly reduce your total cost of ownership. The
Premier Java RDP Applet is an OEM of the HOBLink
JWT (Java Windows Terminal) product created by HOB
Inc., a leading European software company specializing
in Java programming.

*See* http://www.hobsoft.com/products/secure_remote_access/
JWT_Juniper_SA.jsp (accessed April 13, 2015).

30.    The Pulse Accused Instrumentalities provide a system, computer
storage medium, and method for on-demand remote control that allows a user at a
first computer to remotely control an application at a second computer by using a
remote control module without pre-installing remote control software on the first
computer.

31.    The Hob Accused Instrumentalities provide a system, computer
storage medium, and method for on-demand remote control that allows a user at a
first computer to remotely control an application at a second computer by using a
remote control module without pre-installing remote control software on the first
computer.

32.    On information and belief, Pulse has sold and/or provided the Pulse
Accused Instrumentalities, and continues to sell and/or provide the Pulse Accused

Instrumentalities, directly and/or indirectly, to third parties, including but not limited to customers, manufacturers, distributors, and/or resellers (collectively, "Pulse Downstream Parties").

33.     On information and belief, Hob has sold and/or provided the Hob Accused Instrumentalities, and continues to sell and/or provide the Hob Accused Instrumentalities, directly and/or indirectly, to third parties, including but not limited to customers, manufacturers, distributors, and/or resellers (collectively, "Hob Downstream Parties").

34.     On information and belief, Defendants have had actual knowledge and notice of the '598 Patent, and of the infringement of the '598 Patent by making, sale, use, offer for sale and/or importation of the Pulse Accused Instrumentalities and Hob Accused Instrumentalities, since at least as early as September 24, 2010, when Tridia contacted Hob by letter about licensing the technology covered by the '598 Patent.

## COUNT I
## Infringement of U.S. Patent No. RE38,598 Against Pulse

35.     Tridia repeats and realleges paragraphs 1-34 above as if set forth herein.

36.     On information and belief, Pulse has (either by itself, through parties acting under its direction or control, or both) infringed and continues to infringe at least claims 1-6, 8, 9, 11-14, 18-25, 46-56, 58-65, 67, 69, 70, and 72 of the '598 Patent (the "Pulse Accused Claims") within the meaning of 35 U.S.C. § 271 by, without Tridia's authority, importing, making, using, selling, and/or offering to sell in or into the United States products or services incorporating the technology covered by the '598 Patent including the Pulse Accused Instrumentalities.

37.     On information and belief, Pulse Downstream Parties have been and are now infringing, including under 35 U.S.C. § 271(a), at least the Pulse Accused Claims of the '598 Patent, without Tridia's authority, importing, making, using, selling, and/or offering to sell in the United States products or services incorporating the technology covered by the '598 Patent including the Pulse Accused Instrumentalities.

38.     On information and belief, Pulse has, since at least September 24, 2010, either known or been willfully blind to the fact that such unauthorized acts by Pulse Downstream Parties of importing, making, using, selling, and/or offering to sell products or services incorporating the technology covered by the '598 Patent including the Pulse Accused Instrumentalities directly infringe the '598

Patent.  Tridia has further notified Pulse of such infringement through the filing of this complaint.

39.     On information and belief, Pulse through the sale and distribution of products incorporating the technology covered by the '598 Patent including the Pulse Accused Instrumentalities is actively, intentionally, and/or knowingly inducing the direct infringement of at least the Pulse Accused Claims of the '598 Patent by Pulse Downstream Parties, including in this District and elsewhere in the United States.

40.     On information and belief, Pulse has encouraged and continues to actively encourage Pulse Downstream Parties to directly infringe the '598 Patent by at least (a) marketing products incorporating the technology covered by the '598 Patent including the Pulse Accused Instrumentalities to Pulse Downstream Parties, (b) providing user guides and technical specifications to Pulse Downstream Parties that encourage the use of applications and methods of use for such products incorporating the technology covered by the '598 Patent including the Pulse Accused Instrumentalities, including those marketed on Pulse's website, http://www.pulsesecure.net/, (c) providing technical training to Pulse Downstream Parties, and (d) providing technical support and assistance to Pulse Downstream

Parties during the life cycle of the products incorporating the technology covered by the '598 Patent including the Pulse Accused Instrumentalities.

41.      On information and belief, as a proximate result of Pulse's inducement, the Pulse Downstream Parties have infringed and continue to directly infringe at least the Pulse Accused Claims through the use of products incorporating the technology covered by the '598 Patent including the Pulse Accused Instrumentalities.

42.      On information and belief, Pulse knew or should have known that its conduct would induce the Pulse Downstream Parties to directly infringe at least the Pulse Accused Claims of the '598 Patent.

43.      Thus, Pulse has specifically intended to induce, and has induced, Pulse Downstream Parties to infringe at least the Pulse Accused Claims of the '598 Patent, and Pulse has known of or been willfully blind to such infringement. Pulse has advised, encouraged, and/or aided Downstream Parties to engage in direct infringement, including through its encouragement, advice, and assistance to Pulse Downstream Parties to use products incorporating the technology covered by the '598 Patent including the Pulse Accused Instrumentalities.

44.     Based on, among other things, the foregoing facts, Pulse has induced, and continues to induce, infringement under 35 U.S.C. § 271(b) of at least the Pulse Accused Claims of the '598 Patent.

45.     Further, products incorporating the technology covered by the '598 Patent including the Pulse Accused Instrumentalities are imported, made, used, sold, and/or offered for sale in or into the United States by Pulse and are especially made and adapted – and specifically intended by Pulse – to be used to infringe at least the Pulse Accused Claims of the '598 Patent.

46.     The products incorporating the technology covered by the '598 Patent including the Pulse Accused Instrumentalities imported, sold, and/or offered for sale in or into the United States by Pulse are not staple articles or commodities of commerce and, due to their specific design, do not have substantial non-infringing uses.

47.     On information and belief, since at least September 24, 2010, Pulse has been willfully blind to the fact that the products incorporating the technology covered by the '598 Patent including the Pulse Accused Instrumentalities are especially made and adapted for – and are in fact used – by Pulse Downstream Parties and infringe at least the Pulse Accused Claims of the '598 Patent, and that the products incorporating the technology covered by the '598 Patent including the

17

Pulse Accused Instrumentalities are not staple articles or commodities of commerce suitable for substantial non-infringing use. Tridia has further notified Pulse of the foregoing facts through the filing of this complaint.

48.    Based on, among other things, the foregoing facts, Pulse has contributorily infringed, and continues to contributorily infringe, at least the Pulse Accused Claims of the '598 Patent under 35 U.S.C. § 271(c).

49.    Tridia has suffered damages as a result of the direct and indirect infringing activities of Pulse and/or parties acting at Pulse's direction and control, and Tridia will continue to suffer damages as long as those infringing activities continue.

50.    Tridia has been and will continue to be irreparably harmed by the direct and indirect infringing activities of Pulse and/or parties acting at Pulse's direction and control unless and until such infringement is enjoined by this Court.

51.    On information and belief, Pulse (and/or parties acting at Pulse's direction and control) has directly and indirectly infringed the '598 Patent willfully and deliberately. Pulse had knowledge of the '598 Patent since at least September 24, 2010 and knew or should have known that there was an objectively high likelihood that its actions constituted infringement of one or more claims of the '598 Patent.

52.     As a result of Pulse's deliberate, intentional and willful infringement, Tridia is entitled to enhanced damages under 35 U.S.C. § 284.

53.     Tridia has suffered damages as a result of Pulse's infringement of the '598 Patent in an amount to be proven at trial.

**COUNT II**
**Infringement of U.S. Patent No. RE38,598 Against Hob**

54.     Tridia repeats and realleges paragraphs 1-53 above as if set forth herein.

55.     On information and belief, Hob (either by itself, through parties acting under its direction or control, or both) has directly infringed and continues to infringe at least claims 1-6, 8, 9, 11-14, 18-25, 46-56, 58-65, 67, 69, 70, and 72 of the '598 Patent (the "Hob Accused Claims") within the meaning of 35 U.S.C. § 271 by, without Tridia's authority, importing, making, using, selling, and/or offering to sell in or into the United States products or services incorporating the technology covered by the '598 Patent including the Hob Accused Instrumentalities.

56.     On information and belief, Hob Downstream Parties have been and are now infringing, including under 35 U.S.C. § 271(a), at least the Hob Accused Claims of the '598 Patent by, without Tridia's authority, importing, making, using,

19

selling, and/or offering to sell in the United States products or services incorporating the technology covered by the '598 Patent including the Hob Accused Instrumentalities.

57.     Hob has, since at least September 24, 2010, either known or been willfully blind to the fact that such unauthorized acts by Hob Downstream Parties of importing, making, using, selling, and/or offering to sell products or services incorporating the technology covered by the '598 Patent including the Hob Accused Instrumentalities directly infringe the '598 Patent.  Tridia has further Hob of such infringement through the filing of this complaint.

58.     On information and belief, Hob through the sale and distribution of products incorporating the technology covered by the '598 Patent including the Hob Accused Instrumentalities is actively, intentionally, and/or knowingly inducing the direct infringement of at least the Hob Accused Claims of the '598 Patent by Hob Downstream Parties, including in this District and elsewhere in the United States.

59.     On information and belief, Hob has encouraged and continues to actively encourage Hob Downstream Parties to directly infringe the '598 Patent by at least (a) marketing products incorporating the technology covered by the '598 Patent including the Hob Accused Instrumentalities to Hob Downstream Parties,

(b) providing user guides and technical specifications to Hob Downstream Parties that encourage the use of applications and methods of use for such products incorporating the technology covered by the '598 Patent including the Hob Accused Instrumentalities, including those marketed on Hob's website, http://www.hobsoft.net/, (c) providing technical training to Hob Downstream Parties, and (d) providing technical support and assistance to Hob Downstream Parties during the life cycle of the products incorporating the technology covered by the '598 Patent including the Hob Accused Instrumentalities.

60.     On information and belief, as a proximate result of Hob's inducement, the Hob Downstream Parties have infringed and continue to directly infringe at least the Hob Accused Claims through the use of products incorporating the technology covered by the '598 Patent including the Hob Accused Instrumentalities.

61.     On information and belief, Hob knew or should have known that its conduct would induce the Hob Downstream Parties to directly infringe at least the Hob Accused Claims of the '598 Patent.

62.     Thus, Hob has specifically intended to induce, and has induced, Hob Downstream Parties to infringe at least the Hob Accused Claims of the '598 Patent, and Hob has known of or been willfully blind to such infringement.  Hob

21

has advised, encouraged, and/or aided Downstream Parties to engage in direct infringement, including through its encouragement, advice, and assistance to Hob Downstream Parties to use products incorporating the technology covered by the '598 Patent including the Hob Accused Instrumentalities.

63.     Based on, among other things, the foregoing facts, Hob has induced, and continues to induce, infringement under 35 U.S.C. § 271(b) of at least the Hob Accused Claims of the '598 Patent.

64.     Further, products incorporating the technology covered by the '598 Patent including the Hob Accused Instrumentalities are imported, made, used, sold, and/or offered for sale in or into the United States by Hob and are especially made and adapted – and specifically intended by Hob – to be used to infringe at least the Hob Accused Claims of the '598 Patent.

65.     The products incorporating the technology covered by the '598 Patent including the Hob Accused Instrumentalities imported, sold, and/or offered for sale in or into the United States by Hob are not staple articles or commodities of commerce and, due to their specific design, do not have substantial non-infringing uses.

66.     Since at least September 24, 2010, Hob has been willfully blind to the fact that the products incorporating the technology covered by the '598 Patent

including the Hob Accused Instrumentalities are especially made and adapted for – and are in fact used – by Hob Downstream Parties and infringe at least the Hob Accused Claims of the '598 Patent, and that the products incorporating the technology covered by the '598 Patent including the Hob Accused Instrumentalities are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Tridia has further notified Hob of the foregoing facts through the filing of this complaint.

67.    Based on, among other things, the foregoing facts, Hob has contributorily infringed, and continues to contributorily infringe, at least the Hob Accused Claims of the '598 Patent under 35 U.S.C. § 271(c).

68.    Tridia has suffered damages as a result of the direct and indirect infringing activities of Hob and/or parties acting at Hob's direction and control, and Tridia and will continue to suffer damages as long as those infringing activities continue.

69.    Tridia has been and will continue to be irreparably harmed by the direct and indirect infringing activities of Hob and/or parties acting at Hob's direction and control unless and until such infringement is enjoined by this Court.

70.    Hob (and/or parties acting at Hob's direction and control) has directly and indirectly infringed the '598 Patent willfully and deliberately.  Hob had

knowledge of the '598 Patent since at least September 24, 2010 and knew or should have known that there was an objectively high likelihood that its actions constituted infringement of one or more claims of the '598 Patent.

71.    As a result of Hob's deliberate, intentional and willful infringement, Tridia is entitled to enhanced damages under 35 U.S.C. § 284.

72.    Tridia has suffered damages as a result of Hob's infringement of the '598 Patent in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Tridia respectfully requests the following relief:

(a)    A judgment that Pulse has infringed the '598 Patent in violation of 35 U.S.C. § 271;

(b)    A judgment that Hob has infringed the '598 Patent in violation of 35 U.S.C. § 271;

(c)    A judgment that Pulse has contributed to the infringement of the '598 Patent by others and/or induced the infringement of the '598 Patent by others in violation of 35 U.S.C. § 271;

(d)    A judgment that Hob has contributed to the infringement of the '598 Patent by others and/or induced the infringement of the '598 Patent by others in violation of 35 U.S.C. § 271;

(e)     A permanent injunction be issued, pursuant to 35 U.S.C. § 271, restraining and enjoining Pulse, its officers, agents, attorneys, and employees, and those acting in privity or concert with them, and their successors and assigns, from engaging in infringing conduct;

(f)     A permanent injunction be issued, pursuant to 35 U.S.C. § 271, restraining and enjoining Hob, its officers, agents, attorneys, and employees, and those acting in privity or concert with them, and their successors and assigns, from engaging in infringing conduct;

(g)     A judgment that Pulse's infringement of the '598 Patent has been willful under 35 U.S.C. § 284;

(h)     A judgment that Hob's infringement of the '598 Patent has been willful under 35 U.S.C. § 284;

(i)     A judgment against Pulse that the present case is exceptional pursuant to 35 U.S.C. § 285;

(j)     A judgment against Hob that the present case is exceptional pursuant to 35 U.S.C. § 285;

(k)     A judgment that Pulse and Hob are jointly and severally liable to Tridia;

(l)     An award to Tridia of such monetary damages to which it is entitled to compensate it for Pulse's infringement of the '598 Patent, with interest as fixed by the Court, such damages to be trebled in accordance with 35 U.S.C. § 284 as a consequence of Pulse's willful infringement;

(m)     An award to Tridia of such monetary damages to which it is entitled to compensate it for Hob's infringement of the '598 Patent, with interest as fixed by the Court, such damages to be trebled in accordance with 35 U.S.C. § 284 as a consequence of Hob's willful infringement;

(n)     An award to Tridia of its costs, expenses, and fees, including reasonable attorneys' fees, in this action;

(o)     Such other relief as this Court may deem just, equitable, and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Tridia hereby demands a trial by jury on all claims and issues so triable.

Dated this 17th day of April 2015.

Respectfully submitted,

s/  *Douglas D. Salyers*
Douglas D. Salyers, Esq.
Georgia Bar No. 623425
Puja Patel Lea, Esq.
Georgia Bar No. 320796
TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street NE, Suite 5200
Atlanta, GA 30308-2216
Tel:  404.885.3000
Fax:  404.962.6673
Email: doug.salyers@troutmansanders.com
Email: puja.lea@troutmansanders.com

*Attorneys for Plaintiff Tridia Corporation*

27

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing was prepared using Times New Roman

14-point font, and otherwise conforms to the requirements of Local Rule 5.1.

TROUTMAN SANDERS LLP

*s/ Douglas D. Salyers*